

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2009

# Wheeler v. Township of Edison

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2323

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Wheeler v. Township of Edison" (2009). *2009 Decisions.* Paper 1478.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1478

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2323
_____

EDWARD WHEELER,

Appellant

v.

TOWNSHIP OF EDISON; JUN CHOI, individually and
in his official capacity as Mayor of the Township of Edison,


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-05207)

District Judge: Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 10, 2009
_____

Before: FUENTES, CHAGARES and ALDISERT, Circuit Judges

(Filed: April 27, 2009)


_____


OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Edward Wheeler appeals the District Court's grant of summary judgment, in favor of the Township of Edison and Jun Choi ("Appellees"), on Wheeler's political patronage and New Jersey Conscientious Employee Protection Act ("CEPA") claims. For the reasons that follow, we will affirm.

I.

Because we write solely for the parties, who are familiar with the facts and proceedings in the District Court, we need only briefly recite the facts. In 2006, Jun Choi ("Choi") became the Mayor of Edison Township. As Mayor, Choi was the Director of Public Safety, the civilian head of the Edison Police Department. Edward Wheeler, a sergeant in the Edison Police Department, publicly supported Mayor Choi's opponents in both the primary mayoral election of 2005 and the general mayoral election of 2006, including donating funds to Bill Stephens, who was Choi's opponent in the 2006 general election.

A few days before the 2006 general election, Wheeler, in the normal course of his police duties, investigated a vandalism incident of a Stephens campaign sign. Brian Smith, one of the alleged perpetrators, when interviewed by Wheeler, stated that police officers were aware of his activities and that Mayor Choi himself ordered removal of the opposition's sign. Because Smith had implicated police officers in wrongdoing, Wheeler reported the incident to his superiors. After the election, an Internal Affairs investigation conducted by a Choi supporter exonerated all involved.

2

After his election, Choi announced that there would be promotions in the Police Department. Choi directed the Chief of Police to convene the command staff and to provide him with two promotional lists, one consisting of Lieutenants eligible for promotion to the rank of Captain and the other consisting of no less than nine eligible candidates to be considered for promotion from the rank of Sergeant to Lieutenant. The command staff listed eight sergeants as recommended for promotion to the rank of Lieutenant. Sergeants McElwain and Kirsch received nine command-staff votes each; Sergeants Berrue, Shannon and Stein received eight votes each; the Appellant received seven votes; Sergeant Marcantuono received four votes and Sergeant Gesell received two votes. Of the eight Sergeants on the list, Choi selected Shannon and Marcantuono for promotion to the rank of Lieutenant. Marcantuono actively supported Choi's 2005 election campaign and Shannon attended Mayor Choi's inaugural ball.

After the promotions were announced, the Appellant filed a two-count complaint in the United States District Court for the District of New Jersey. The first count alleged that Edison and Choi deprived the Appellant of his First Amendment rights in violation of 42 U.S.C. § 1983 by using political patronage in making promotions within the Edison Police Department. The second count alleged retaliation against the Appellant for whistleblowing in violation of CEPA, N.J. Stat. Ann. § 34:19-1 et seq.

The District Court granted the Appellees' motion for summary judgment on both counts on April 15, 2008. A timely Notice of Appeal was filed on May 5, 2008.

3

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment *de novo*, applying the same standard as did the district court. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); Hubbard v. Taylor, 399 F.3d 150, 157 n.12 (3d Cir. 2005). A grant of summary judgment is proper when, viewing the facts in the light most favorable to the non-moving party and making all reasonable inferences in that party's favor, the moving party has established that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). In opposing summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Only disputes over facts that might affect the outcome of the lawsuit, under the governing substantive law, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. Similarly, a non-moving party may not rest upon mere allegations, general denials or vague statements. Trap Rock Indus. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992). "Finally, where the First Amendment is involved, we 'undertake exacting review of the whole record with a

4

particularly close focus on facts that are determinative of a constitutional right.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Armour v. County of Beaver, Pa., 271 F.3d 417, 420 (2d Cir. 2001).

## III.

It is a violation of the First Amendment for public agencies to discharge, promote, transfer, recall or make other hiring decisions involving public employees based on party affiliation and support unless the government can show that the position involves policy making, and that party affiliation is therefore an appropriate requirement for the position. Elrod v. Burns, 427 U.S. 347, 372-373 (1976); Branti v. Finkel, 445 U.S. 507, 514-515 (1980); Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990). "A citizen's right not to support a candidate is every bit as protected as his right to support one" and therefore the protections of the Elrod-Branti-Rutan trilogy encompass claims of political discrimination where a government employer takes an adverse employment action because she does not want to fill employment positions that would otherwise be available to her supporters. Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997) (citing Rutan, 497 U.S. at 67-68; Bennis v. Gable, 823 F.2d 723, 731 (3d Cir. 1987)).

Political discrimination cases employ similar, though not identical, burden-shifting mechanisms as those used in other employment discrimination contexts, such as Title VII cases. Stephens, 122 F.3d at 176. First the plaintiff must make out a prima facie case. We apply a three-part test to establish a prima facie political patronage claim. The plaintiff

5

must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct and (3) this conduct was a substantial or motivating factor in the government's employment decision. Galli, 490 F.3d at 271.

Once the plaintiff has made this prima facie case, the employer may avoid liability by proving, by a preponderance of the evidence, that the same employment actions would have been taken even in the absence of the protected activity. Stephens, 122 F.3d at 176. Once the employer has articulated a nondiscriminatory reason for the employment action, the plaintiff may still prevail by discrediting that proffered reason, either circumstantially or directly, or by proving that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Here, the parties agree that Wheeler has satisfied the first two elements of his prima facie burden because the Police Lieutenant position does not require political affiliation and both Wheeler's non-support of Choi and his support of Choi's opponents constitute constitutionally protected conduct. The key issue is whether or not Wheeler's political activity, or lack thereof, was a substantial or motivating factor in his non-promotion. Implicit in this prong are two requirements; a plaintiff must produce evidence to show that defendants had knowledge of his political affiliation in addition to demonstrating causation. Stephens, 122 F.3d at 177-180. At the outset, we note that the complaint does

6

not directly assert any improper non-advancement of the Appellant based on his political activity or lack thereof, but instead alleges that politics was the important factor used by Choi in promoting officers Shannon and Marcantuono. This distinction becomes clear in our discussion of causation, below.

"Proof of knowledge can come from direct or circumstantial evidence." Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 664 (3d Cir. 2002). Here, drawing all factual inferences in the Appellant's favor, discovery shows that the Appellant publicly supported Mayor Choi's opponents in both the primary election of 2005 and the general election of 2006, donating funds to Bill Stephens, who was Choi's opponent in the 2006 general election. There is no direct evidence that Mayor Choi knew of the Appellant's political affiliation before this lawsuit was filed. However, there is evidence that in the two years that Choi has been Mayor, he has made eight promotions within the police department, and at least seven of those eight were Choi supporters. Evidence also shows that the Mayoral campaign was a major topic for discussion in the Edison Police Department, and that within that department there were three major camps: pro-Choi, pro-Stephens, and those who were silent on the issue. Wheeler was firmly in the Stephens camp. Further, the evidence shows that several police officers were very active in Choi's campaign and had regular meetings with Choi at his campaign headquarters. Although there is no direct evidence that Mayor Choi knew the Appellant's political affiliation, viewing the facts in the light most favorable to Wheeler, as we must on review of summary judgment, a

7

reasonable jury could infer that Mayor Choi knew who his supporters were and that Wheeler was not among them.

To establish causation, the Appellant must produce sufficient evidence from which a reasonable jury could conclude that his political affiliation was a substantial or motivating factor in his not being promoted. Galli, 490 F.3d at 276. To prove causation, the Appellant offers that of the eight police department promotions Choi has made since becoming Mayor, seven of those were Choi supporters, and the eighth refused to openly campaign for Choi's opponent when asked.[1]

More specifically, discovery has shown that Wheeler was one of eight candidates listed for possible promotion by the command staff to the rank of Lieutenant and that he received fewer votes than did five other candidates. A reasonable jury could find that both candidates chosen for promotion, Officers Marcantuono and Shannon, were Choi supporters. Additionally, Officer Marcantuono received fewer votes than did Wheeler and had a worse disciplinary record. However, there were four candidates on that list with more votes than the Appellant who were also not promoted.

The Appellant argues that because the command staff voted by secret ballot, we can never know if the two "no votes" the Appellant received from the command staff came

---

[1] The District Court found that of the eight officers promoted by Choi, five were Choi supporters. The District Court should not have ignored disputed facts in the Appellant's favor as to the political affiliation of Officers Shannon and Bryan. Nevertheless, the Appellant fails to raise an issue of material fact for trial.

from Choi supporters. However, the Appellant offers no evidence indicating which members of the command staff were, in fact, Choi supporters, offering only conjecture that the two votes against Appellant came from hypothetical Choi supporters. This is insufficient. The final promotional decision rested with the Mayor and the Appellant did not offer any evidence establishing that he was any more qualified than the other candidates that were also overlooked for a promotion. Therefore, the Appellant has failed as a matter of law to demonstrate that his political affiliation was a substantial or motivating factor in his non-promotion. See Stephens, 122 F.3d at 180 ("Of course, a plaintiff must be able to show some realistic threshold causal connection between the injury suffered and the defendant's unlawful conduct.")

Additionally, the Appellant's numerical argument is unavailing. The Appellant notes that the Edison Police Department consists of 200 officers with approximately 40 officers holding the rank of Lieutenant or higher and argues that, without employing political patronage, it would be statistically impossible for seven-eighths of Choi's promotions within the Department to be awarded to his political supporters. Rather, with the police department divided into three camps, pro-Choi, pro-Stephens, and those who were silent on the issue, it is not statistically impossible that seven of eight officers chosen for promotion would be Choi supporters and the Appellant provides no evidence, other than bald assertion, to the contrary.

Finally, the Appellant argues that the District Court ignored the factual similarity

9

between Stephens v. Kerrigan and the case at bar. Although similar, the Appellant ignores the fact that in Stephens the Court had substantially more evidence to link the non-promotion to political affiliation. Id. at 173-181. Therefore, the District Court did not err in failing to identify a causal link between Wheeler's political affiliation or un-affiliation and the adverse employment action.

IV.

Wheeler also alleges illegal retaliation against him as a whistleblower under CEPA, N.J. Stat. Ann. § 34:19-1 et seq. The New Jersey Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employees from engaging in such conduct." Abbamount v. Piscataway Twp. Bd. of Educ., 650 A.2d 958, 971 (N.J. 1994), superseded by statute on other grounds, N.J. Stat. Ann. § 34:19-5. The New Jersey Supreme Court has held that a CEPA claim requires: (1) a reasonable belief that the employer's conduct was violating either a law, rule or regulation promulgated pursuant to law or a clear mandate of public policy; (2) performance of a whistleblowing activity described in N.J. Stat. Ann. § 34:19-3c; (3) an adverse employment action; and (4) a causal connection between the whistleblowing activity and the adverse employment action. Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003). CEPA claims are evaluated in accordance with the federal courts' approach to discrimination claims under Title VII of the Civil Rights Act of 1964 and we therefore utilize the same burden shifting analysis described in Part III, above. See

10

Abbamont, 650 A.2d at 964; Myers v. AT&T, 882 A.2d 961, 966 (N.J. Super. Ct. App. Div. 2005).

Assuming, as did the District Court, that Wheeler can satisfy the first three prongs, the causation issue remains. Discovery revealed that Mayor Choi came to learn shortly after the election that Wheeler was involved in Smith's arrest, which is not itself an act of whistleblowing. It was not until after Wheeler filed suit, more than eight months later, that Choi learned about the internal police investigation instigated by Wheeler's report to superiors.

The Appellant must establish a factual nexus between his protected activity under CEPA and the alleged retaliatory conduct. Hancock v. Borough of Oaklyn, 790 A.3d 186, 194 (N.J. Super. Ct. App. Div. 2002). Temporal proximity, in and of itself, is insufficient to establish causation. Id. The facts disclose that Wheeler reported both to his lieutenant and to the Chief of Police that Smith had implicated both Choi and police officers who were Choi supporters in Smith's destroying a campaign sign of Bill Stephens. The Appellant argues that "it could reasonably be inferred" that Choi saw the flashing lights on the night in question, and asked what was happening, especially considering he was meeting with several police officers in his campaign headquarters at the time. The issue here, however, is not knowledge of the arrest, but knowledge of whistleblowing activity.

Although New Jersey courts permit causation to be determined by inference, Maimon v. Atlantic City, 903 A.2d 1055, 1064 (N.J. 2006), the Appellant offers no other

11

evidence with which to craft such an inference. The only evidence that the Appellant offers is a blind contention that because Mayor Choi met regularly with several police officers during his campaign, he is lying in his certification when he states that although he knew about the Appellant's involvement in Smith's arrest shortly after the election, he was unaware that the Appellant had initiated an internal affairs investigation. Without any other evidence but mere conjecture of knowledge, this is insufficient. Accordingly, the Appellant's CEPA claim fails for want of causation.

V.

Finally, the Appellant's arguments regarding the application of New Jersey Court Rule 4:69 are not persuasive. The Appellant's complaint alleged a number of improprieties regarding Choi's promotions within the Police Department. Most notably, the Appellant asserts that Choi and the Township violated the applicable promotional ordinance because Section B of the ordinance calls for a "majority-rules system" and Lieutenant Marcantuono received only four of nine possible command staff votes. The Appellant now argues that the District Court misconstrued New Jersey law in failing to uphold his challenges to these improprieties.

The Appellant's arguments are meritless because he did not not seek to challenge the promotions as violative of this local ordinance, and the District Court explained that even had the Appellant so challenged the promotions, he would not have been granted relief.

12

New Jersey courts, "from an early date, have lent the aid of the appropriate prerogative writ to private persons seeking to remedy wrongful acts of public officials when the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights and the public convenience will be subserved thereby." Schwartz v. Essex County Bd. of Taxation, 28 A.2d 482, 483 (N.J. 1942). New Jersey Court Rule 4:69 provides the framework for the filing of an action in lieu of prerogative writs. Rule 4:69 states that "No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b) of this rule." N.J. Ct. R. 4:69-6. None of the municipal acts cited in paragraph (b) of the rule covers personnel decisions of municipalities. Therefore, as held the District Court, Wheeler could have filed an action in lieu of prerogative writs to challenge the promotions of Lieutenants Shannon and Marcantuono in February or March of 2006. He did not do so, waiting instead until October 30, 2006, to file this discrimination suit. Although the Appellant indirectly contends that the 45-day rule of N.J. Ct. R. 4:69-6 should have been suspended by the District Court because the Appellant's claims raise novel or important constitutional issues, citing Hawthorne PBA Local 200 v. Borough of Hawthorne, 945 A.2d 736 (N.J. Super. Ct. App. Div. 2008), this case is distinguishable and therefore inapplicable. Specifically, Hawthorne concerned the passage of a promotional ordinance alleged to violate a state statute, not, as here, a single promotional decision. Id. at 738. As such, the

13

District Court did not err in its discussion of New Jersey Court Rule 4:69.

******

We have considered all contentions raised by the parties and conclude that no further discussion is necessary.

The judgment of the District Court will be affirmed.

14